**SARA M. PELOQUIN**
California State Bar No. 2549545
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467, ext. 3716
Email: sara_peloquin@fd.org

Attorneys for Mr. Salvador Alonso-Aldama

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE BARRY T. MOSKOWITZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 86CR0824-BTM |
| Plaintiff, | DATE: July 9, 2008 |
| | TIME: 2:00 P.M. |
| v. | |
| SALVADOR ALONSO-ALDAMA, | STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF |
| Defendant. | DEFENDANT'S MOTIONS |

**I.**

**STATEMENT OF FACTS**

Mr. Alonso was arrested September 22, 1986, on suspicion of conspiracy to import 422 pounds of marijuana. See Exhibit A,(Docket Report). He was released on October 10, 1986, after posting a $150,000 personal appearance bond secured by a $10,000 cash deposit and the title deed to real property at Lot 86 San Marcos Woods, Unit #3 in the City of San Marcos. This property was owned by his wife's family. See Exhibit A (Docket Report) and Exhibit D, (Presentence Report). On October 3, 1986, the Grand Jury returned a four count indictment charging Mr. Alonso with conspiracy to import and possess with intent to distribute marijuana and aiding and abetting in violation of 18 U.S.C. §§ 952, 960, 963, 846, 841(a)(1). See Exhibit C, (Indictment).

Mr. Alonso entered a conditional plea of guilty to all four counts, pending appeal of the District Court's denial of his motion to suppress his post-arrest statements. He was sentenced on May 11, 1987,

1  by Judge Rudi M. Brewster to 60 months imprisonment to be followed by 5 years probation (Count 2 thirty
2  months; count 3 thirty months consecutive to count 2; Counts 1 and 4 ten years suspended sentence with
3  a period of 5 years probation to run concurrently) See Exhibit E (Judgement and Commitment).

4  On May 14, 1987, Mr. Alonso was granted bail pending appeal. Bail was set in the amount of
5  $250,000 secured by real property. See Exhibit A. The Docket report indicates that the property posted was
6  owned by Aantonio and Valentina Ffierro.

7  On May 19, 1988, the District Court filed a certified copy of the order of the Ninth Circuit affirming
8  the judgment of conviction. See Exhibit A. The court held a hearing to file the judgment of commitment
9  and remand Mr. Alonso into custody. Id. Mr. Alonso failed to appear and a bench warrant was issued. Id.
10 The government moved to default on the bond on August 15, 1988, but then withdrew its motion on
11 September 19, 1988. Id.  The court ordered the bond exonerated on September 29, 1988. Id.

12 Mr. Alonso contends that he was deported from the United States prior to the affirmance of his
13 conviction by the Ninth Circuit and therefore never had notice of the decision of the court of appeals.
14 Mr. Alonso's immigration status in the United States for the duration of his case is unclear. The PSR
15 indicates that he is a Mexican citizen and that he was paroled into the United States until May 4, 1987. See
16 Exhibit D, page 1. It also indicates that Mr. Alonso had been deported on a number of occasions and even
17 suffered a conviction for illegal entry in 1980. Furthermore, the government withdrew its motion to forfeit
18 the bond and the bond was exonerated, a result that supports Mr. Alonso's assertion that he has deported
19 and did not jump bail.

20 Mr. Alonso was arrested on March 31, 2008, when he applied for admission to the United States
21 at the San Ysidro Port of Entry to attend his mother's funeral. He appeared before Magistrate Judge
22 Battaglia on April 2, 2008, and the government moved for detention. The detention hearing set for April
23 4, 2008, was continued to April 15, 2008, as Mr. Alonso's case file could not be located. On April 15, 2008
24 neither the government nor the court had located any documents in connection with Mr. Alonso's case.
25 Defense counsel moved to vacate the warrant based on the absence of any charging document or judgment
26 of conviction. This motion was denied and Judge Battaglia ordered Mr. Alonso detained. On May 5, 2008,
27 the government produced to Mr. Alonso the following documents: 1) the complaint, 2) the indictment, 3)
28 the presentence report, 4) the judgment and commitment, and 5) the order setting the original bond on

October 3, 1986. On May 9, 2008, this court held a status hearing. The parties requested a continuance. The Court requested that the government produce evidence of the mandate issued by the Ninth Circuit after Mr. Alonso's appeal.   On May 27, 2008, this court held another status hearing. On that day the government produced to the Court the unpublished Ninth Circuit opinion affirming Mr. Alonso's conviction.

## II.

## THE COURT HAS JURISDICTION TO CONSIDER MR. ALONSO'S MOTION UNDER RULE 35 BECAUSE IT IS TIMELY.

Under the 1987 version of the Federal Rules of Criminal Procedure an individual had the right to apply to the sentencing court for a reduction in his sentence within one-hundred-and-twenty days after 1) the sentence is imposed, 2) receipt of the court of a mandate of affirmance of the judgment or dismissal of the appeal, or, 3) the denial of Certiorari by the Supreme Court or an order from that court upholding the conviction. Fed. R. Crim. Procedure 35(b) (1987). The one-hundred-and-twenty day period is jurisdictional and the sentencing court does not have the power to act on an untimely motion. United States v. United States District Court (Friedman), 509 F.2d 1352, 1354 (9th Cir. 1975). Once a timely motion is filed the Court may act to reduce the sentence within a reasonable time thereafter, even if the one-hundred-and-twenty-day period has expired at the time the court renders its decision. United States v. Smith, 650 F.2d 206, 209 (9th Cir. 1981); United States v. Rapp, 814 F.2d 1398, 1399 ( 9th Cir. 1987).

**A. Mr. Alonso's Lack of  Notice of The Denial of His Appeal Resulted in a Violation of His Due Process Rights Tolling the One-Hundred-And-Twenty Day Time Limit Under Rule 35.**

It is axiomatic that the Due Process Clause of the Fifth Amendment requires that Mr. Alonso be afforded notice and  a hearing where his constitutional or statutory rights are affected by government action. Hamdi v. Rumsfeld, 542 U.S. 507 (2004). Under the Federal Rules of Criminal Procedure in effect at the time of the affirmance of his conviction, Mr. Alonso has a statutory right under Rule 35 to petition the sentencing court for a reduction of sentence within 120 days of the receipt by the court of the mandate of the Court of Appeals.  Accordingly Mr. Alonso has a due process right to *notice* of receipt of the mandate of affirmance denying his appeal and to a hearing on the merits of his Rule 35 request for a reduction of

his sentence. Rule 35 implicitly contemplates notice to the defendant of the starting of the 120 day clock. The 120 day starts from the last of three possible dates: 1) the date sentence was imposed, 2) the date of the receipt by the trial court of the mandate of affirmance from the Court of Appeals, or 3) the date of entry of an order or judgment by the Supreme Court denying certiorari or a decision upholding the conviction or sentence. Fed R. Crim P. 35. Each of these dates implies clear notice to the defendant of the event triggering the start of the 120 day clock. Presumably he will be personally present at sentencing and is thus actually noticed of the event starting the clock. He will either receive actual notice through counsel, or constructive notice through public docket entries of the denial of his applications for relief from either the Court of Appeal or the Supreme Court.

Mr. Alonso was deprived of actual or constructive notice of the starting of the 120 day time limit because he was deported to Mexico before the trial court received the mandate from the Court of Appeals denying his appeal. He was thus denied the opportunity to be actually or constructively noticed of the starting of the 120 day clock. Mr. Alonso was prejudiced by this lack of notice because he was prevented from exercising his right to request a reduction in his sentence under Rule 35. Thus, Mr. Alonso's due process rights were violated with respect to his right to have the sentencing judge reconsider the sentence imposed. The correct remedy is the tolling of the 120 day clock until Mr. Alonso was actually noticed of the denial of his appeal on May 27, 2008 at the status hearing held before this court. Therefore, Mr. Alonso's motion is timely, as it is made within 120 days of his actual notice of the denial of his appeal.

**B. Mr. Alonso Is Entitled to Equitable Tolling of the One-Hundred-And-Twenty Day Time Limit Under Rule 35.**

The Supreme Court has held that the Rule of Criminal Procedure are not inflexible and that a defendant may be excused from untimely action where he demonstrates exceptional circumstances that caused the delay. Fallen v. United States, 378 U..S. 139 (1964). The First Circuit has applied this principle in the context of motions under Rule 35, finding that a delay in filing by a *pro se* applicant caused by the negligence of prison officials did not divest the Court of jurisdiction to consider the merits of his motion. Dodge v. Bennet, 335 F.2d 657 (1st Cir. 1964).

The Ninth Circuit has recognized the principle of equitable tolling of time limits in the context of filing of habeas petitions otherwise time barred by the Anti Terrorism and Effective Death Penalty Act's

(AEDPA) one year time limit. <u>Calderon v. United States District Court for the Central District of California</u> (<u>Beeler</u>), 128 F.3d 1283 (9th Cir. 1997) (reversed on other grounds). Equitable tolling is warranted where extraordinary circumstances beyond the petitioner's control proximately caused the delay in filing and the petitioner diligently pursued his claims after the removal of the extraordinary circumstance. <u>Roy v. Lampert</u>, 465 F.3d 964 (9th Cir. 2006); <u>Stillman v. Lamarque</u>, 319 F.3d 1199 (9th Cir. 2003); <u>Spitzyn v. Moore,</u> 345 F.3d 796 (9th Cir. 2003);

The Ninth Circuit has recognized extraordinary circumstances in a variety of factual circumstances. <u>Lampert</u>, 465 F.3d 964 (remanded for evidentiary hearing where allegations of deficient law library if true would warrant equitable tolling for pro se petitioners); <u>Lamarque</u>, 319 F.3d 1199 (equitable tolling where prison officials promised but failed to secure petitioner's signature and return the petition to his attorney in time for timely filing); <u>Moore,</u> 345 F.3d 796 (equitable tolling warranted where egregious attorney misconduct in failing to return phone call, file the habeas petition for which he was hired and refused to return the petitioner's file); <u>Beeler</u>, 128 F.3d 1283 (equitable tolling where habeas counsel accepted employment out of state leaving behind work product that was unusable to new counsel).

Here, Mr. Alonso's deportation is an extraordinary circumstance out of his control that warrants equitable tolling. Mr. Alonso was forced to quit the United States against his will. He was told that he did not have permission to return to the United States. Therefore, Mr. Alonso did not have the opportunity to apply for a reduction of his sentence under Rule 35 because of the actions of the United States government in deporting him to Mexico. Mr. Alonso has diligently pursued his right to file a motion for reduction of sentence by filing the instant motion within 120 days of his return to the United States. The 120 day time limit should therefore be equitably tolled for the period during which Mr. Alonso was involuntarily outside the United States.

**C. Because Mr. Alonso Was Deported Prior to the Execution of His Sentence He is Entitled To File a Rule 35 Motion For Reduction of Sentence Within 120 Days of Execution of his Sentence.**

Where an individual's sentence is suspended or he receives sentence of probation and his conditional liberty is revoked he has 120 days from the revocation and re-sentencing to file a motion for reduction of sentence under Rule 35. <u>United States v. DeWald</u>, 669 F.2d 590 (9th Cir. 1982) (expressly adopting the reasoning of <u>United States v. Johnson</u>, 634 F.2d 94, (3rd Cir. 1980) and <u>United States v.</u>

Colvin, 644 F.2d 703 (8th Cir. 1981). In adopting the reasoning of Johnson and Colvin, the Ninth Circuit acknowledged that an individual who receives a suspended or non-custodial sentence has no incentive to apply for a discretionary reduction of his sentence and the purpose of Rule 35 is to afford every person a second chance to have the severity of his sentence considered by the sentencing court. DeWald, 669 F.2d 590 at 593.

Here, Mr. Alonso is similarly situated to an individual whose conditional liberty is revoked because the execution of his sentence was effectively suspended by his involuntary departure from the United States. Mr. Alonso would have little incentive to apply for a reduction of his sentence after he was deported to Mexico by the United States government. For this reason Mr. Alonso must have 120 days from the execution of his sentence to make a motion for a reduction in his sentence. The instant motion is therefore timely.

**D. The Policy Considerations Underlying the 120 Day Limit On Motions Under Rule 35 Are Not Applicable In This Case And Therefore The Court Should Consider Mr. Alonso's Application.**

The oft stated policy behind the 120 day time bar on motions for reduction of sentence under Rule 35 is to protect "judges from repeated importunities by those sentenced and it ensures that the court does not usurp the responsibilities of parole officials by retaining jurisdiction indefinitely and acting on the motion in light of the movant's conduct in prison." United States v. Smith, 650 F.2d 206, 208 (9th Cir. 1981); United States v. United States District Court (Friedman), 509 F.2d 1352, 1356 (9th Cir.1975); United States v. Hayes, 983 F.2d 78 (7th Cir. 1992);

Neither of these policy considerations play a role in Mr. Alonso's case. Mr. Alonso has never had an opportunity to make the instant motion due to his deportation to Mexico and the Court would not be usurping the responsibilities of the parole board as Mr. Alonso has not even been in custody for the 120 days contemplated by the Rule 35.

**E. The Court Retains Jurisdiction for a Reasonable Time After the One-Hundred -And-Twenty Day Period to Consider Mr. Alonso's Timely Filed Motion.**

Where a Rule 35 motion is timely filed the court retains jurisdiction for a reasonable time after the expiration of the 120 day period to decide the motion. United States v. Rapp, 814 F.2d 1398 (9th Cir. 1987); United States v. Stump, 914 F.2d 170 (9th Cir. 1990). As stated above, Mr. Alonso's motion is timely filed.

Therefore, the court retains jurisdiction to consider the motion for a reasonable time after the filing of this motion.

### III.
### THE COURT SHOULD IMPOSE A SENTENCE OF PROBATION.

**A. THE INDIVIDUAL BEFORE THE COURT**

Mr. Alonso is 51 years of age. He has resided in Mexico since he was deported over twenty years ago. He is married to his wife of 15 years, Patricia Alonso. Together they have two children. Eight years ago Mr. Alonso suffered a crippling accident when he fell off the roof of his house damaging his T-11 vertebra. He is a paraplegic now and has no use of his lower limbs. He is confined to a wheelchair. He requires the use of a catheter to urinate. Mr. Alonso also has difficulty having bowel movements due to his condition. He needs assistance with every day-to-day task involving mobility. He cannot lie down by himself, get up by himself, shower by himself or dress by himself.

The offense conduct for which Mr. Alonso stands convicted and sentenced occurred over twenty years ago when Mr. Alonso was thirty years old. Since his deportation he has remained in Mexico working as a journalist.

**B. SENTENCING FACTORS**

Pursuant to Section 3553(a), the Court shall consider the nature and circumstances of the offense; Mr. Alonso's history and characteristics; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes by Mr. Alonso and the need to provide him with needed educational or vocational training, medical care or other correctional treatment in the most effective manner. In addition the Court must consider the kinds of sentences available; Mr. Alonso's guideline range; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims of the offense. The sentence imposed must be sufficient but not greater than necessary to achieve the purposes of sentencing, including the need for rehabilitation.

The Court has wide discretion in fashioning a sentence to meet the goals of Section 3553(a). In imposing sentence the Court must impose a sentence in accordance with the parsimony principle, imposing only the sentence that is sufficient, but not greater than necessary to meet the statutory sentencing objectives. 18 U.S.C. §3553(a). The United States Sentencing Guidelines, however, should not be

considered because they were not considered in Mr. Alonso's original sentencing hearing. Judge Brewster declared the guidelines unconstitutional in United States v. Arnold, 678 F.Supp 1463 (S.D. Cal.1988) and the Ninth Circuit agreed in Gubienso-Ortiz v. Kanahele, 857 F.2d 1245 (9th Cir. 1988). The guidelines did not become effective in the Ninth Circuit until the United States Supreme Court held that the guidelines were in Mistretta v. United States, 488 U.S. 361 (1989), overruling Gubiensio.

**1.    THE NATURE AND CHARACTERISTICS OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF MR. ALONSO**

i.    Nature and Characteristics of the Offense.

Mr. Alonso conspired to bring approximately 422 kilograms of marijuana to the United States via the San Ysidro Port of Entry. Mr. Alonso was not the driver of the load vehicle. His role was to pick up the marijuana from the courier, Julian Lopez-Clare, pay him, and take it to an unknown destination. He did not own the marijuana or assist in loading it into the vehicle.

ii.    History and Characteristics of Mr. Alonso.

Although, he has a previous law enforcement contacts it appears the most serious is a theft offense from 1977 when he was only 21 years old. See Exhibit D(PSR) page 6. The remainder of the contacts are immigration related and resulted in his removal from the United States. See Id., page 7.

**2.    THE NEED FOR THE SENTENCE IMPOSED**

i.    To Reflect the Seriousness of the Offense, to Promote Respect for the Law and to Provide Just Punishment

Mr. Alonso respectfully requests a sentence of probation. Mr. Alonso has been in custody for eighty-nine days as of the time of the filing of this motion.

ii.    To Afford Adequate Deterrence.

A sentence of probation will afford adequate deterrence in this case. The period of incarceration that Mr. Alonso has already served has had all the deterrent effect necessary under § 3553(a). Quite simply, Mr. Alonso will never be involved in this type of activity again. Further, the offense conduct in question took place over twenty years ago and Mr. Alonso has not been involved in similar activity since.

iii.    To Protect the Public from Further Crimes by Mr. Alonso.

Mr. Alonso has lead a law abiding life for the past twenty-two years. Given Mr. Alonso's age, paralysis, and the shock of the past few months in custody he is unlikely to commit further crimes. Mr. Alonso was deported from the United States over twenty years ago and never attempted to return until the death of his mother. Even so, Mr. Alonso came to the port of entry requesting legal permission to come to his mother's funeral. He did not attempt to be smuggled in or avoid inspection as so many people do. If granted probation, it is unlikely that Mr. Alonso would ever try to return to the United States. Therefore, goal of protecting the public from future crimes is met by a sentence of probation.

    iv.    <u>To Provide Mr. Alonso with Needed Educational or Vocational Training, Medical Care or Other Correctional Treatment in the Most Effective Manner.</u>

Mr. Alonso has very serious medical needs due to his paralysis. He needs constant nursing care and needs physical therapy and regular nursing care. He is confined to a wheelchair and requires the use of a catheter to urinate. Mr. Alonso also has difficulty having bowel movements due to his condition. Obviously, Mr. Alonso needs help with every day-to-day task that involves mobility. He cannot lie down by himself, get up by himself, shower by himself or dress by himself. Once he is assisted from his bed to his chair, he must remain in the chair for the remainder of the day. This causes muscle spasms and malaise. These needs are best met outside of prison, in Mexico, where his wife care for him and he can benefit from Mexico's socialized health care for low income people. Therefore a sentence of probation best meets this objective.

**3.    THE KIND OF SENTENCES AVAILABLE.**

The Court may impose a sentence of probation instead of imprisonment. 18 U.S.C. § 3661(c)(1). The Court is also free to substitute any portion of the term imprisonment for time in a halfway house, home detention, residential drug treatment program or community service. 18 U.S.C. § 3553; <u>United States v. Booker</u>, 543 U.S. 220 (2005).

**4.    PERTINENT POLICY STATEMENTS**

Congress has recognized that imprisonment is not an appropriate means of promoting correction and rehabilitation. <u>See</u> 18 U.S.C. § 3582.

**5.   THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR CONDUCT**

A sentence of probation would not result in unwarranted sentence disparities among those with similar records convicted of similar crimes. Although, other convicted of similar conduct often receive substantial custodial sentences, any sentencing disparity is warranted in this case due to the unusual circumstances of Mr. Alonso's deportation, law abiding life in Mexico for the past 20 years and present medical condition. In short, for the reasons presented by Mr. Alonso in this motion for reduction of sentence any disparity is warranted by the facts of this case.

## IV.
## CONCLUSION

For the reasons stated above, Mr. Alonso-Aldama respectfully requests that this Court grant the foregoing motions.

Respectfully submitted,

Dated: June 25, 2008

*/s/ Sara M. Peloquin*
**SARA M. PELOQUIN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Alonso-Aldama